[No. 12405.   Department One.   April 29, 1915.]

BRIDGEPORT MILLING COMPANY, *Respondent,* v. COLUMBIA & OKANOGAN STEAMBOAT COMPANY, *Appellant.*[1]

APPEAL—REVIEW — PRESUMPTIONS — AMENDMENTS TO CONFORM TO PROOF. A complaint in an action on contract for the transportation of wheat in the fall of 1911, will, if necessary, be deemed amended on appeal to conform to the proof, admitted without objection, of a subsequent modification of the contract as construed and agreed to by the parties, for the transportation of the wheat in the spring of 1912.

CARRIERS—CONTRACTS—BREACH — DELAY — DAMAGES — DEFENSES. Liability for damages for unreasonable delay by a steamboat company in transporting wheat down the river pursuant to its contract with plaintiff, whereby plaintiff lost an advantageous sale of the wheat to a milling company, cannot be avoided by the steamboat company on the claim that plaintiff's contract with the milling company was an absolute sale at the point up the river where the wheat was located, where in fact the sale was dependent on the transportation of the wheat, and was rescinded by the milling company for failure to transport and deliver the wheat.

[1]Reported in 148 Pac. 6.

Appeal from a judgment of the superior court for Chelan county, Grimshaw, J., entered May 16, 1914, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Reeves, Crollard & Reeves,* for appellant.

*Thomas & Hannan,* for respondent.

PARKER, J.—The plaintiff seeks recovery of damages claimed to have resulted from unreasonable delay on the part of the defendant in receiving and transporting a quantity of wheat which it was under obligation to transport for the plaintiff. The cause was tried by the court without a jury, resulting in findings and judgment against the defendant, from which it has appealed.

Respondent is engaged in buying and selling grain and manufacturing the same into flour and other products, with its principal place of business at Bridgeport, on the Columbia river, situated about 100 miles above Wenatchee. Appellant is engaged in the transportation business, operating a number of steamboats on the Columbia river between Wenatchee and Bridgeport.

In September, 1911, respondent established a wheat buying station at Alameda, on the Columbia river, some thirty-five miles above Bridgeport. The Columbia river is not safely navigable at all seasons of the year between Bridgeport and Alameda, being navigable during two or three months in the fall and two or three months in the spring of the year. Soon after respondent established its purchasing station at Alameda, it purchased, and had on hand in the fall of 1911, about 20,000 bushels of wheat ready for shipment down the river. Before it established this buying station at Alameda, appellant agreed with respondent that it would receive such wheat as respondent should buy at Alameda and transport the same down the river to Wenatchee or intervening points during the fall of 1911. There were not, during that fall nor during the year 1912, any other facilities for the shipping of

wheat from Alameda. The agreement on the part of appellant to receive and transport such wheat as respondent should purchase at Alameda, made prior to the establishing of respondent's purchasing agency there, was the principal inducement prompting respondent to establishing such purchasing agency; for, without a dependable agreement which respondent could look to for the transportation of such wheat as it should buy at that point, it would be wholly impractical, from the standpoint of profits, to maintain a purchasing agency at that place, there being no established transportation facilities therefrom.

During the fall of 1911, appellant transported about 5,-000 bushels of wheat for respondent, to this extent complying with the agreement. Whether respondent made demand upon appellant for the transporting of the balance of the wheat during that fall is one of the disputed questions of fact in this case. However that may be, no more wheat was transported during that year. There is evidence warranting the conclusion that it was, in any event, then understood that the balance of the wheat should be transported down the river during the navigable season in the spring of 1912. A considerable amount of correspondence passed between appellant and respondent in the early spring of 1912 which evidences an understanding between them that appellant was considered as being under obligation to respondent to transport the balance of the wheat during that spring. Repeated demands made by respondent upon appellant to that end did not result in the wheat being transported during that spring, and it was not transported until the fall of 1912. In the spring of 1912, while demands were being made upon appellant to transport the wheat, it was informed of a contract for a sale of the wheat being made between respondent and the Wenatchee Milling Company at one dollar a bushel, less coast freight rates. Failure to transport the wheat resulted in failure of consummation of this contract, and consequent loss to respondent by reason of subsequent depreciation of

the market value of the wheat. The evidence also warrants the conclusion that the price agreed upon between respondent and the Wenatchee Milling Company was in fact the market price at that time. When the wheat was finally transported to market in the fall of 1912 by appellant, the market price had materially depreciated. This was the cause of respondent's damage. As to the amount of respondent's damage, if it is entitled to recover any, there seems to be no serious controversy upon this appeal. The trial court found, among other facts,

"That defendant's equipment for the transportation of freight was such that it could, with reasonable diligence, have received said wheat and transported the same from said Alameda in the year 1912, and before high water in the Columbia river that spring and summer, but it was negligent therein and its failure to transport said wheat was due to negligence of defendant."

The only questions here presented which we regard as calling for our serious consideration are questions of fact.

Counsel for appellant contend that the original contract for the transportation of the wheat in the fall of 1911 was abrogated by mutual consent in the fall of that year, and that there was no certain agreement as to appellant's further duty to transport the wheat in the spring of 1912. A review of the evidence convinces us, however, that the trial court reached a correct conclusion upon this question.

Contention is also made that the contract, in any event, was void in that it impaired the ability of appellant as a common carrier to fulfill its duty to the public as such. This, also, in its final analysis, is only a question of fact, as to which we think the evidence preponderates in favor of respondent.

Some contention is made which seems to rest upon the theory of variance between the proof and the allegations of the complaint. It is true that the allegations of the complaint seem to rest upon the theory that the contract sued upon was

that made in the fall of 1911, before the establishment of respondent's purchasing agency at Alameda. However, the evidence touching appellant's continued obligation under that contract, as construed and understood by the parties in the spring of 1912, appears to have been received without objection. It is also to be noted that damages are claimed in the complaint for failure to transport the balance of the wheat in the spring of 1912. We think, upon the whole record, we should regard the complaint as amended to fit this proof, if indeed any such amendment is necessary.

Some contention is made rested upon the theory that the agreement between respondent and the Wenatchee Milling Company was in fact a sale of the wheat, passing the title thereof at Alameda, and that, therefore, respondent had an enforcible right against the Wenatchee Milling Company for the purchase price of the wheat, which was, in any event, unaffected by appellant's failure to transport the same down the river. We do not construe the contract between respondent and the Wenatchee Milling Company as an absolute consummated sale. The evidence as a whole convinces us that the sale to the Wenatchee Milling Company in the spring of 1912 was understood to be dependent for its consummation upon the transportation of the wheat down the river by appellant under its agreement with respondent, and was subject to rescission for failure of transportation during the navigable season in the spring of 1912, the Wenatchee Milling Company having rescinded the contract because of failure of transportation during that spring.

The judgment is affirmed.

MORRIS, C. J., HOLCOMB, MOUNT, and CHADWICK, JJ., concur.